IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DIAMOND RESORTS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 6:18-CV-03053-MDH |
| | ) | |
| MUTUAL RELEASE CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiff's Motion for Sanctions (Doc. 202), Plaintiff's Motion to Compel Forensic Imaging (Doc. 193), and Defendant Jason Levi Hemingway's Motion for Evidentiary Hearing (Doc. 195). For the reasons stated below, the Court will grant Plaintiff's Motion for Sanctions and Motion to Compel Forensic Imaging. On August 29, 2019, the Court held an evidentiary hearing concerning certain discovery violations raised in Plaintiff's Motion to Compel Forensic Imaging. (Doc. 226). Since this was the relief requested by Defendant in his Motion, the Court considers this motion to have been granted but notes the hearing has already taken place.

**1. Motion for Sanctions**

Plaintiff moved for sanctions against Defendant Jason Levi Hemingway for his repeated failure to comply with the Court's discovery orders. The Court will briefly review the history of discovery between these parties.

**a. Background**

On December 21, 2018, Plaintiff served a request for production on Defendant. (Doc. 112). On February 8, 2019, the Court ordered Defendant to supplement some of his interrogatory

1

responses and narrowed Plaintiff's production requests. (Doc. 136). On February 27, 2019, Plaintiff requested Defendant further supplement his responses to include all documents in his control after identifying certain types of documents that they thought were missing from his first production . Additional documents were produced to Plaintiff on March 20, 2019, but it was nowhere close to the amount of documentation expected.

Plaintiff, believing there to be further unproduced but responsive documents in Defendant's possession, started discussions with Defendant concerning additional production. On April 2, 2019, the parties jointly moved to allow Defendant until April 8, 2019, to supplement his responses so as to comply with his obligations under the Court's discovery order. (Doc. 157). The Court granted the parties' motion, and additionally ordered Defendant to submit a privilege log for any documents he believed should be withheld on the basis of a privilege. (Doc. 160). The Court also clarified that all responsive Principal Transfer Group, Inc. ("PTG") records under Plaintiff's control fell within the scope of discovery. *Id.* PTG is wholly owned and under the control of Defendant Jason Hemingway.

On April 8, 2019, Defendant produced 400 emails to Plaintiff in .pdf format, without any attachments. Plaintiff left out a great deal of responsive records, including full payment or invoice records, Salesforce records, and records relating to the services provided by PTG, Inc., to its clients. Because Defendant's production was clearly inadequate and violated the Court's discovery order, Plaintiff reached out to Defendant to inquire about the missing records. In response, Defendant produced additional documents, mainly attorney referral forms belonging to PTG. Plaintiff, still unsatisfied with this production, scheduled a telephone conference with the Court for April 26, 2019. On April 25, 2019, Defendant produced yet more responsive documents, in this case invoices belonging to PTG.

2

During the April 26 telephone conference (Doc. 171), the Court (1) ordered Plaintiff to send Defendant a list of responsive documents it believed existed and was waiting to receive and (2) ordered Defendant to provide responsive emails to Plaintiff with the metadata and attachments intact. The Court advised Defendant that further obstinance during discovery would result in sanctions. On April 27, 2019, Plaintiff sent to Defendant a list of responsive documents it believed existed but that had not been produced. Defendant produced responsive emails on April 30 and on May 2, 2019, although the May 2 production was in an apparently unviewable format. On May 9, 2019, Defendant made an additional production of emails, albeit without metadata. Throughout the spring and summer of 2019, Plaintiff repeatedly requested payment records and invoices from Defendant, as opposed to just emails. Defendant, during this period, produced no paper records or any kind of records beside emails, which were themselves devoid of metadata or attachments.

On June 5, 2019, the Court ordered Defendant to produce all responsive documents on a rolling basis in accordance with the Court's earlier order that all responsive documents be produced by April 8, 2019. (Doc. 199). It characterized Defendant's attitude toward discovery up to that point as "lackadaisical, if not recalcitrant[.]" *Id.* On June 7, 2019, Defendant represented to Plaintiff that all responsive documents had been produced.

### b. Missing Documents

Plaintiff alleges that Defendant, despite his June 7 representation, has refused to produce paper customer files, Salesforce records, disposition records, and payment or ACH records. Plaintiff also accused Defendant of altering invoices by improperly redacting them in an attempt to conceal the name of the company that generated that business for PTG and Hemingway.

At the evidentiary hearing on Plaintiff's sanctions motion, Defendant admitted that he altered invoices by masking certain parts of those invoices during the copying process, and further

3

admitted that not all responsive documents had been produced. Specifically, when asked if he altered invoices to conceal the affiliate company that generated PTG's business, Defendant responded "Yes." Defendant also admitted to not producing call records, disposition forms, paper records, email attachments, or anything from the Salesforce database. Defendant claimed he was not aware of his obligation to produce these records. However, this claim is simply not credible in light of documentary evidence showing Plaintiff specifically requested these documents as early as April 27, 2019. Finally, Defendant did not produce call notes maintained by PTG staff that detailed specific customer interactions, even though these records would be responsive and were confirmed to exist at the hearing.

Defendant has not yet produced any invoices, ACH records, or payment records, despite Plaintiff specifically requesting these documents on April 27, 2019. At the hearing, Defendant claimed at one point he was never asked for those records. Again, this is clearly false—those records were requested in the April 27, 2019 email. At a different point during the hearing, Defendant acknowledged he was aware of his obligation to produce those records but claimed the ACH records and other payment records were difficult to produce because some of those records were generated when PTG was using a different bank. Defendant's banking decisions do not provide an adequate excuse for his failure to comply with discovery orders. Even having switched banks, Defendant is assumed to have access to records generated in the course of his business that lie in the custody of his former banks.

The Court notes that Plaintiff at the evidentiary hearing submitted into evidence multiple records, including invoices, obtained from Defendant months earlier in litigation before the U.S. District Court for the Middle District of Florida docketed as *Wyndham Vacation Ownership, Inc., et al., v. The Montgomery Law Firm, LLC, et al.*, and assigned number 6:18-cv-02121-ORL-KRS.

4

Upon its own review of these records, the Court finds them to be responsive and concludes they should have been produced by Defendant in this litigation. The existence of these records confirms Defendant has withheld records in its possession in violation of the Court's discovery orders.

### c. Sanctions

After careful review of the record in this case and after a hearing on the matter, the Court finds that Defendant's repeated refusal to comply with the orders of this Court during discovery merits sanctions. Defendant has repeatedly violated of the Court's discovery orders by failing to timely produce extant and responsive records. Defendant's conduct has been marked by the repeated use of dilatory and evasive tactics, most notably by (1) producing records in unusable formats; (2) making false representations as to the completion of production, only to produce more records upon further inquiry from Plaintiff; (3) not producing certain types of records known to exist; and (4) intentionally masking information from invoices produced during the copying process. To this day, he has not produced certain key records, most notably Salesforce records, paper records, call notes, and unaltered invoices. Defendant's conduct has grossly delayed this litigation, causing serious prejudice to Plaintiff and creating unnecessary work for the Court and Plaintiff's counsel. Most troublesome, the fact that Defendant intentionally altered records before producing them to Plaintiff raises an inference that Defendant's defiance and slow-walking, far from being the result of incompetence or naivety as to the seriousness of his discovery obligations, was an attempt to conceal evidence that would be probative of Plaintiff's claims. Falsifying evidence imposes unacceptable burdens on the opposing party and the Court, even when the alteration is discovered. *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015).

By way of a remedy, Plaintiff requests that Defendant's pleadings be struck and that default be entered in its favor. These sanctions are allowable under Fed R. Civ. P. 37 but are only an option if there is (1) an order compelling discovery; (2) a willful violation of the order; and (3) prejudice. *Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990. 992 (8th Cir. 2014) (internal citations omitted). In addition, a sanction less extreme than dismissal must be investigated unless Defendant's failure was both deliberate and in bad faith. *Id.* (quoting *Avionic Co. v. Gen. Dynamics Corp.*, 857 F.2d 555, 558 (8th Cir. 1992). The *Comstock* elements are satisfied in this case because there have been willful violations of the Court's discovery orders, resulting in prejudice. However, although Defendant deliberately altered certain records and engaged in dilatory tactics, the Court believes Defendant either acted in bad faith or gravely misunderstood the nature of his discovery obligations and the seriousness of the Court's orders. The latter could fall partly upon the shoulders of defense counsel Montgomery, who either failed to explain Defendant's discovery obligations and the Court's expectations to his client and/or provide proper professional guidance to his client in the discovery process. Nonetheless, this Court believes entering default is a more extreme measure than is necessary here at this time. For that reason, although the Court will sanction Defendant, it will give him a final chance before resorting to the drastic sanctions authorized by Fed. R. Civ. P. 37(b)(2)(A)(iii) and (vi).

Under Fed. R. Civ. P. 37(b)(2)(C), the Court must order the disobedient party to pay the reasonable expenses, including attorney's fees, caused by the failure to comply with the Court's discovery orders. Consequently, Defendant is hereby **ORDERED** to pay Plaintiff's reasonable expenses, including attorney's fees, caused by his failure to comply with the Court's discovery orders. Plaintiff has 14 days to move the Court for an amount it contends is due as a result of

discovery delays and failures and shall support that amount with explanation and available documentation. Defendant is granted 14 days to respond to Plaintiff's motion.

Finally, the Court again advises Defendant that, pursuant to the Court's prior orders, he is obligated to produce to Plaintiff in unaltered form all Salesforce records, disposition records, client records, hard-copy records, ACH and other payment records, invoices, attachments to already-produced emails, call notes, Google Sheets, Quickbook records, and any other responsive documents within his control or possession. <u>Defendant shall produce these documents to Plaintiff no later than a week from the date this Order is entered.</u> If Defendant believes any of these records are privileged, he shall submit those documents to the Court with an accompanying privilege log. If the Court later finds that Defendant has not fulfilled his discovery obligations within this timeframe, it will upon Plaintiff's motion consider whether additional sanctions, as well as the entry of a contempt order, may be appropriate.

**2. Plaintiff's Motion to Compel Forensic Imaging**

In light of Defendant Jason Levi Hemingway's admitted alteration of certain documents, it is **ORDERED** that Plaintiff is authorized to employ a third-party e-discovery vendor to forensically inspect any computers belonging to Defendant or under his control that contain responsive documents. See *Balboa Threadworks, Inc. v. Stucky*, 2006 WL 763668, at *3 (D. Kan. Mar 24, 2006); *Jacobson v. Starbucks Coffee Co.*, 206 WL 3146349, at *7 (D. Kan. Oct. 31, 2006) (authorizing forensic imaging of a defendant's computer in light of incomplete and inconsistent responses to discovery requests regarding records on that computer). Plaintiff may make copies of any responsive records not already in Plaintiff's possession but may not retain any non-responsive or privileged records. If Defendant asserts privilege over a record, they shall submit the evidence to the Court with a privilege log. Plaintiff and Defendant shall arrange for the forensic inspection

to occur at a time and place convenient to both parties but in no event later than the close of discovery.

**IT IS SO ORDERED.**

DATED: September 13, 2019

                                       */s/ Douglas Harpool*
                                       **DOUGLAS HARPOOL**
                                       **UNITED STATES DISTRICT JUDGE**